ARTHUR J. POPE, petitioner,

*v.*

GEORGE BROWN et al., defendants.

[May 20th, 1925.]

**Children—Custody—Proceedings by Father Against Child's Maternal Grandparents, in Whose Care the Mother Had Placed the Child Before Her Death—Alleged Abandonment of Child by Father—Conduct of Father Toward Wife Reflects No Credit Upon Him, But Abandonment Nor Right of Custody in Grandparents. Not Established—Right of Custody Prima Facie is in Father Unless Lost by Abandonment and Decree Will Go to Father, With Right of Visitation by Grandparents, With Costs in Favor of Grandparents.**

*Mr. Frank I. Casey,* for the petitioner.

*Mr. Charles A. Malloy,* for the defendants.

BUCHANAN, V. C.

This is a *habeas corpus* proceeding brought by petitioner for the custody of his infant son, about one year of age, against the child's maternal grandparents, who have refused him possession. The child's mother is dead. The pleadings raise the issue of the right to the permanent custody of the child.

In such a case, the father has *prima facie* the legal right to the custody of his child, and, ordinarily, is entitled to have that right enforced by decree of this court in proceedings such as the present. *Richards* v. *Collins, 45 N. J. Eq. 283;  Warnecke* v. *Lane, 75 Atl. Rep. 233; In re Kirschner, 111 Atl. Rep. 737;  Ziezel* v. *Hutchinson, 91 N. J. Eq. 325; In re Judge, 91 N. J. Eq. 395.*

The legal right may be lost by surrender (as in cases of statutory adoption) or by abandonment. See the cases, *supra.* Furthermore, even where it has not been lost, it will

not be enforced where such enforcement would "imperil the personal safety, morals, health or happiness of the child." *Richards* v. *Collins, supra; In re Kirschner, supra.*

Where the legal right has not been lost, however, and the exceptional circumstances just mentioned do not appear, the father is entitled to the custody of his child of tender years, as against the maternal grandparents. Such was the express determination of the court of errors and appeals in *Ziezel* v. *Hutchinson, supra.*

The defendants contend that the evidence shows an abandonment by the petitioner, and rely upon the analogy of the facts in *Warnecke* v. *Lane, supra.* Each case necessarily stands on its own facts and circumstances, and the case at bar by no means parallels the *Warnecke Case.* The present petitioner is a young man. He was married May 29th, 1922. The couple never had a separate home of their own, living first with the husband's mother, later with the wife's aunt, and still later with the wife's parents (the present defendants), with whom they were living when the child was born, April 3d, 1924, and up until June 2d, 1924, when the husband left. The wife (and child) continued to live with her parents until her death, November 21st, 1924, and they have had the child ever since.

The husband had previously left his wife for about two and a half months, while they were living with his mother. The precise circumstances of this separation do not appear. His leaving in June, 1924, seems to have been the result of a quarrel or disagreement arising out of a call by the wife's minister and some real or alleged slight of the minister by petitioner, augmented by friction later in the evening, when he desired to go to sleep and she did not. It appears that he insisted on occupying the same bed with his wife notwithstanding her illness (which seems to have been of some tubercular nature). There had also been friction as to his remarks concerning the child, and as to the wife's alleged refusals to let him see or caress the child.

He says that after he left in June, 1924, he went back, and his wife told him "she didn't want to see him again," and

that both she and her mother said they did not want any support from him. The mother denies this; the wife, of course, cannot. In any event, he did not contribute to the support of the wife or child thereafter, the defendants defraying all expenses, even including the large physician's bill for the wife's illness. He did not attend his wife's funeral, but says that was because he believed her parents did not want him there.

Petitioner applied to defendants for the child on November 26th, the day following his wife's funeral, and again on November 29th, in company with some justice of the peace or constable, but defendants refused to permit him to have the child. The mother left a will directing that her parents should have the custody of the child, and, admittedly, they are fond of the child. The present petition was filed March 18th, 1925.

It must be conceded that the husband's conduct toward his wife and child reflects no credit upon him, to say the least. Even assuming that the difficulties between them were largely the result of the wife's whims or beliefs, not founded on reasonable or factual basis, he should have taken into consideration her condition of illness, and should have made allowances therefor in favor of the woman he had vowed to love and cherish, rather than to stand out for his real or fancied "rights," and suffer himself to be piqued at real or fancied disregard thereof. Of course, his failure to contribute to the support of the child is indefensible, but it apparently was the result of the strained relations between himself and his wife and her parents. The grandmother and a nurse both testify that on one occasion petitioner said he didn't want anything more to do with the child, because it "looked too much like a Brown" (his wife's maiden name), but the same nurse says that petitioner "did show affection for the child until it was moved downstairs."

On the whole case I am not able to find that petitioner abandoned the child or the right to its custody. The facts are more nearly similar to those in the *Ziezel Case* (*supra*) than in the *Warnecke Case*.

Nor do the facts show that custody in the father would imperil the child's safety, morals, health or happiness. Petitioner is living with his aunt, twenty-seven years of age, and her husband and child of seven. The aunt is a practical nurse. There is not a great difference between the physical surroundings in the two homes. Perhaps, in view of the tubercular disease of the mother, safety lies rather away from the home of the grandparents.

In view of the facts and the authorities, I feel constrained to award the custody to the father. There will be, however, a provision for visitation by the grandparents, the benefit of association with whom is pointed out by the court of errors and appeals in *Lippincott* v. *Lippincott, 3 N. J. Adv. R. 687.* The decree will also be for costs in favor of the defendants, under the circumstances.